Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matter of law the following which were entered into by the parties in a Pre-Trial Agreement, at the hearing before the Deputy Commissioner, and by post-hearing agreement as
 STIPULATIONS
1. On 24 July 1995, the date of plaintiff's alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. An Industrial Commission Form 22, Wage Chart, received on 24 November 1996, is admitted into evidence.
4. A set of plaintiff's medical records from Dr. Allen consisting of five pages, received on 3 April 1997, is admitted into evidence.
5. A set of plaintiff's medical records, received on 6 June 1997, is admitted into evidence.
 *************
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the deputy commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was forty-four years old. He had an eighth grade education. His employment history consisted primarily of work involving physical labor.
2. Plaintiff was employed by defendant-employer as a maintenance worker. His work duties included painting and cleaning apartments. On 24 July 1995, plaintiff was mopping a vacant apartment when he slipped and fell backwards, striking his low back on the floor. After falling, plaintiff began experiencing low back pain. He then rested momentarily in a neighboring apartment before collecting his work supplies and returning them to the maintenance shed. Plaintiff attempted to report this incident to his supervisor, Ms. Elchehabi. However, at that time Ms. Elchehabi was leaving work for the day and plaintiff was unable to speak to her.
3. On 25 July 1995, plaintiff telephoned Ms. Elchehabi and left a message on her answering machine stating that he was having problems, but that he would attempt to report to work later that day. Plaintiff did not report to work that day. He attempted to obtain medical treatment from a Doctor's Urgent Care facility, but was refused treatment when he was unable to produce the necessary insurance information.
4. On 26 July 1995, plaintiff telephoned Ms. Elchehabi and requested that she provide him with the name of defendant-employer's insurance company. Plaintiff informed Ms. Elchehabi at that time that he had injured his back while working on 24 July 1995. Ms. Elchehabi provided plaintiff with the information he requested. The following day, plaintiff presented to Harvey C. Schultz, Jr., D.C. At that time, plaintiff was experiencing pain in his neck and low back, tingling in his upper and lower extremities and headaches. Dr. Schultz excused plaintiff from work through 28 August 1995. He ordered a MRI of plaintiff's lumbar spine and referred plaintiff to Dr. Miller for additional evaluation and treatment.
5. Dr. Schultz wrote a note excusing plaintiff from work through 28 August 1995. Plaintiff delivered this note to Ms. Elchehabi. By letter dated 16 August 1995, Ms. Elchehabi informed plaintiff that his employment was terminated due to his allegedly threatening and harassing defendant-employer's residents.
6. Plaintiff presented to Dr. Miller on 30 August 1995. Plaintiff continued to experience pain in his neck and low back, pain extending into his left leg, pain and numbness in his left arm and headaches. Dr. Miller recommended physical therapy. He also prescribed medications and ordered a MRI of plaintiff's cervical spine. Plaintiff had extensive degenerative changes in his lumbar and cervical spine, including degenerative osteophytes encroaching on the exiting neural foraminal at L5-S1.
7. Plaintiff returned to Dr. Miller's office on 14 September 1995 and was examined by a physician's assistant who recommended EMG and NCV studies. Plaintiff did not undergo the studies, but returned to the physician's assistant on 28 November 1995. At that time plaintiff's lower back and left leg symptoms continued.
8. Plaintiff next sought treatment from Dr. Miller on 26 August 1996. Plaintiff was experiencing tingling in his left arm and tingling and swelling in his legs. He also complained of pain in his low back and hips, headaches and difficulty breathing. However, plaintiff did not have any condition that required surgery. Due to his diffuse complaints, Dr. Miller referred plaintiff to a neurologist, Dr. Allen, to determine whether plaintiff had some type of peripheral neuropathy.
9. Plaintiff presented to Dr. Allen on 25 September 1996. Plaintiff informed Dr. Allen that he had pain in his shoulders, weakness in his fingers, pain in his knees, ankles and hips. He also complained of neck and head pain, difficulty focusing his vision and tingling in his hands and toes. Dr. Allen ordered EMG and nerve conduction studies to rule out radiculopathy. Plaintiff had no radiculopathy. The tingling sensations he experienced in his upper and lower extremities were caused by peripheral neuropathies, unrelated to the incident on 24 July 1995.
10. As a result of the incident on 24 July 1995, plaintiff sustained cervical and lumbar strains that exacerbated the underlying degenerative changes in his back. Plaintiff's headaches, difficulty breathing and tingling sensations were not caused by the incident on 24 July 1995.
11. As a result of the incident on 24 July 1995, plaintiff was rendered incapable of earning wages from defendant-employer or any other employer from 25 July 1995 through the date of the hearing in this case.
12. Plaintiff's average weekly wage was $257.88.
 *************
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 24 July 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of his injury, plaintiff is entitled to payment of temporary total disability compensation at the rate of $171.92 per week from 25 July 1995 and continuing until order of the Industrial Commission allowing defendants to cease payment of temporary total disability compensation. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment of all medical expenses incurred as a result of his cervical and lumbar strains. N.C. Gen. Stat. § 97-25.1.
4. Plaintiff is not entitled to payment of medical expenses incurred as a result of his peripheral neuropathy, headaches or breathing difficulties. N.C. Gen. Stat. § 97-25.
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $171.92 per week from 25 July 1995 and continuing until order of the Industrial Commission allowing defendants to cease payment of temporary total disability compensation. To the extent that this amount has accrued, it shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 3.
2. Defendants shall pay all medical expenses incurred or to be incurred in the future by the plaintiff as a result of his injury on July 24, 1995, for so long as such examinations, evaluations and treatments tend to effect a cure or give relief when the bills for same have been submitted and approved through the procedures adopted by the Industrial Commission. However, defendants are not responsible for payment of plaintiff's medical expenses incurred as a result of his peripheral neuropathy, headaches or breathing difficulties.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff in paragraph 1 is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that amount and paid directly to plaintiff's attorney. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
4. Defendants shall pay the costs.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________ LAURA K. MAVRETIC COMMISSIONER
S/ _____________ RENE C. RIGGSBEE COMMISSIONER